**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PRISMIER, LLC | |
| Plaintiff, | |
| v. | Case No. 1:24-cv-10854 |
| SCOTT VAN PELT & ELITE MANUFACTURERS DIRECT, INC. | **DEMAND FOR A JURY TRIAL** |
| Defendants. | |

<u>**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**</u>

For its Complaint against Defendants Scott Van Pelt ("Van Pelt") and Elite Manufacturers Direct, Inc. ("Elite Manufacturers") (collectively, the "Defendants"), Plaintiff Prismier, LLC ("Prismier") states and alleges as follows:

**NATURE OF THE ACTION**

1.      In this lawsuit, Prismier seeks damages and injunctive relief arising from Van Pelt's breaches of his contract and fiduciary duties to Prismier, Defendants' willful misappropriation of Prismier's trade secrets and confidential information, and Defendants' tortious interference with Prismier's business relationships and contracts.

2.      Based in Bolingbrook, Illinois, Prismier is a manufacturer of high-quality, custom metal and plastic parts. Since its founding twenty (20) years ago, Prismier has developed a global customer base by eliminating industry hurdles such as long lead times and outdated techniques, and by providing comprehensive services, including everything from design and prototypes to production, finishing, assembly, packaging, and warehousing.

3.      Van Pelt is the former Senior Director of Business Development for Prismier. In

his final days employed at Prismier, Van Pelt misappropriated Prismier's trade secrets and confidential information on behalf of his newly created entity, Elite Manufacturers. Defendants then used Prismier's trade secrets and confidential information to solicit Prismier's current and prospective customers. Doing so violated: the restrictive covenants and confidentiality requirements of Van Pelt's Employment Agreement; Van Pelt's fiduciary duty of loyalty to Prismier; and, the legal obligations not to misappropriate Prismier's trade secrets or tortiously interfere with its business contracts or expectancies.

4.      Prismier's business has suffered because of Defendants' wrongful conduct, which shows no signs of stopping even after Prismier sent cease-and-desist demands. Prismier seeks both damages for the harm it has already sustained because of Defendants' actions, as well as equitable relief to protect its business and stop Defendants' unlawful conduct.

## THE PARTIES

5.      Prismier is a global manufacturing company that offers comprehensive solutions for its customers seeking custom metal or plastic parts on demand.

6.      Prismier is a limited liability company organized under the laws of Illinois with its principal place of business in Bolingbrook, Illinois. Prismier has two (2) members: David R. Low and Michael J. Tummillo, who are citizens and residents of Illinois.

7.      Defendant Scott Van Pelt is the former Senior Director of Business Development for Prismier. Van Pelt resides in Crystal Lake, Illinois, and is a citizen of Illinois.

8.      Defendant Elite Manufacturers Direct, Inc. is an Illinois corporation incorporated on August 2, 2023. Its principal place of business is in Crystal Lake, Illinois.

9.      Defendant Van Pelt is the President of Elite Manufacturers and, upon information and belief, its sole owner.

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (actions arising under the laws of the United States) as this action arises, in part, under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*.

11.     The Court has supplemental jurisdiction over the state-law claims in this action pursuant to 28 U.S.C. § 1367, as each of the claims in this action are so closely related that they form part of the same case or controversy.

12.     The Court has personal jurisdiction over Defendant Van Pelt, as he is (and was at all relevant times of the allegations in this Complaint) a resident of Illinois, and he performed in Illinois the wrongful conduct alleged in this Complaint.

13.     The Court has personal jurisdiction over Defendant Elite Manufacturers, as it is incorporated in Illinois, its principal place of business is in Illinois, it conducts business in Illinois for Illinois-based customers, and it performed in Illinois the wrongful conduct alleged in this Complaint.

14.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(2), as a substantial portion of the acts, omissions, and transactions giving rise to Prismier's injury occurred in this district and division, where Defendants developed and executed their unlawful scheme of unlawful competition.

## FACTUAL BACKGROUND

### A.  Plaintiff's Business

15.     Based outside Chicago, in Bolingbrook, Illinois, Prismier is a manufacturer of high-quality, custom metal and plastic parts. Since its founding twenty (20) years ago, Prismier has developed a global customer base by eliminating industry hurdles such as long lead times and

outdated techniques, and by providing comprehensive services, including prototypes to production to finishing, assembly, packaging, and warehousing.

16.     Prismier employs thirty-three (33) individuals. A tightknit and highly trusted group of approximately seven (7) individuals make up its executive leadership.

**B. Prismier's Proprietary, Confidential, and Trade Secret Information**

17.     An integral aspect of Prismier's business involves services relating to the prototyping of custom metal and plastic parts. In its process, Prismier maintains proprietary custom design files that are created and owned by its customers. Prismier uses these designs to create prototypes of the metal and plastic parts and, once finalized, to manufacture the custom metal and plastic parts required for a given project.

18.     The design files from Prismier's customers are valuable because they permit Prismier to efficiently manufacture metal and plastic parts for its customers at an efficient rate and a high quality.

19.     Maintaining the confidentiality of the design files is important to and valuable for Prismier because doing so encourages repeat business, by permitting Prismier to service the custom requests of return customers more efficiently than would be possible if Prismier had to restart the design and prototype process each time a customer placed a custom order.

20.     Prismier enters Non-Disclosure Agreements ("NDAs") with its customers to protect their confidential design files.

21.     Van Pelt, who was responsible for customer relations and building business with customers, was aware of the NDAs between Prismier and its customers.

22.     Prismier also maintains a robust, encrypted customer and supplier database containing key information concerning each of its current and prospective customers and suppliers.

Prismier has spent significant time and resources compiling and vetting this customer and supplier database, which includes customer and supplier contracts and nondisclosure agreements, detailed pricing information, the custom design files, and historic orders. It also included ITAR- (International Traffic in Arms Regulations) regulated documents for customers. In short, it houses everything Prismier possesses about each customer.

23.     Prismier's compiled customer and supplier database is valuable because it contains a vetted snapshot of the global customers and suppliers that Prismier has spent twenty (20) years developing. The database is especially valuable because it contains not merely a list of customer and supplier names, but a system of files for each customer and supplier containing all historic information, documents, contracts, and designs for each.

24.     In the hands of a competitor, this database would permit the competitor to have a full manufacturing business, complete with design files, customer information, supplier information, and even individualized pricing information, without needing to expend the time or resources to develop that business information independently.

25.      Prismier takes many steps to protect its proprietary, trade secret, and confidential information.

26.     Prismier requires its employees to sign NDAs and confidentiality agreements before permitting them to access Prismier's confidential and trade secret information.

27.     For its executive employees, like Van Pelt, who have increased access to Prismier's confidential and proprietary information, Prismier requires those employees to enter employment agreements containing confidentiality, non-disclosure, and return of property provisions, as well as restrictive covenants.

28.     Prismier's customer database is encrypted.

29.     Prismier provides company-owned computers to its employees and requires them to use this equipment when viewing, creating, sharing, or storing its confidential and trade secret information.

30.     For the company-owned devices and Prismier's proprietary systems, including intranet and data storage systems, Prismier requires the use of usernames and passwords as a further means of protecting its confidential and trade secret information. To access the confidential database and files, Prismier uses two-factor authentication.

31.     Prismier employees who connect their Prismier email accounts to their personal smartphones must grant Prismier permission to remotely access and wipe the account from the personal smartphone at the end of employment.

32.     Prismier does not allow employees to access Prismier's VPN from personal computers in order to protect against viruses and security threats to Prismier's information. Prismier employees may use personal computers to access the information on their Prismier desktop computers by using a "Remote Desktop" application. When using the Remote Desktop from a personal computer, the application does not permit employees to transfer any files between the remotely accessed Prismier desktop computer and the employee's personal computer or device.

33.     Prismier also significantly limits and restricts access to its confidential and trade secret information on a need-to-know basis and to a select few employees.

34.     Prismier maintains and has all employees execute an Employee Handbook that contains Conflict of Interest and Confidentiality policies. A true and correct copy of the Handbook is attached as Exhibit A.

35.     The Handbook's Conflict of Interest policy states as follows:

> You are expected to devote your best efforts to the interests of the Company and the conduct of its affairs during work time. The

Company recognizes your right to engage in off-duty activities which are of a private nature and are unrelated to the Company's business. However, to enable us to assess and prevent potential conflicts of interest, you are required to contact Dave or Mike, if you are going to accept outside employment that may create a possible conflict of interest.

If you hold outside employment already, you will still be expected to meet Company standards relating to performance and attendance. Employees are to conduct only Company business while at work. You may not conduct other business during regular business hours.f

**(Ex. A at 7.)**

36.     The Handbook's Confidentiality policy states as follows:

You may have access to information which is confidential and proprietary. This information may include, but is not limited to, financial information, sales and customer information, product and pricing, marketing, and advertising information, insurance-related information, information related to management structures, internal policies, and practices of the Company and/or any of its affiliated companies, and information related to Company personnel and their compensation and/or benefits.

All files, books, computer files and other paper or electronic records containing or reflecting this information are the sole property of the Company. These materials may not be copied for personal use, and may not be removed from Company premises without written authorization. Any such materials must also be returned upon termination of employment.

The confidentiality of proprietary information must be maintained at all times. Disclosure of confidential information to any third party (including other employees who have no need to know such information), either during or after employment, or use of confidential information for any reason other than for the performance of duties as an employee of the Company, without our written consent, is strictly prohibited.

Failure to comply with this policy is a serious matter and may result in immediate termination of employment.

Furthermore, you may be asked to sign a confidentiality agreement and a non-compete agreement prior to the start of your employment. Failure to sign either of these documents may be grounds for

termination.

You are expected to follow the spirit as well as the letter of this policy and to cooperate with any questions or investigations concerning any suspected violations.

(Ex. A at 18-19.)

37.     Further, upon separation of employment for any reason, Prismier prevents former employees' access to Prismier's confidential and trade secret information by cutting off the former employee's access to its facilities, systems, and data storage shortly after receiving notice of the termination of employment.

38.     Prismier also demands that former employees immediately return all company equipment in their possession, including computer devices.

**C. Van Pelt's Employment and Employment Agreements with Prismier**

39.     Prismier started working with Van Pelt on a contract basis on October 21, 2015. As a contractor, Van Pelt was responsible for leading business development for Prismier, overseeing cross-functional operations in booking business, managing customer experience, and providing pricing guidance and subject matter expertise.

40.     At the start of his contractual relationship with Prismier, Van Pelt executed a Confidentiality and Non-Disclosure Agreement on October 21, 2015 (the "2015 Confidentiality Agreement"). A true and correct copy of the 2015 Confidentiality Agreement is attached to this Complaint as Exhibit B.

41.     Under the 2015 Confidentiality Agreement, Van Pelt agreed to keep confidential and protect Prismier's confidential information during the term of contracted employment and for three years thereafter:

I agree at all times during the term of my employment and [for a period of ____3____ years] thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm

> or corporation without written authorization of the Company, any Confidential Information of the Company. I understand that "Confidential Information" means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists, markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information disclosed to me by the Company either directly or indirectly.

(Ex. B, 2015 Confidentiality Agreement, at § 1(a).)

42.     Van Pelt also agreed under the 2015 Confidentiality Agreement that he would, at the end of his contracted employment, return all Prismier property to Prismier:

> Upon termination of my employment, I will return to the Company, retaining no copies or notes, all documents relating to the Company's business including, but not limited to, reports, abstracts, lists, correspondence, information, computer files, computer disks, and all other materials and all copies of such material, obtained by me during my employment with the Company.

(*Id.* § 2.)

43.     Van Pelt recognized and agreed "that the Company may be irreparably damaged by any breach of this Agreement and that the Company shall be entitled to seek an injunction, specific performance or other equitable remedy to prevent such competition or disclosure, and may entitle the Company to other legal remedies, including attorney's fees and costs." (*Id.* § 4.)

44.     Prismier hired Van Pelt as an employee on March 15, 2017, as Senior Director of Business Development. As Senior Director of Business Development, Van Pelt was a key executive of Prismier.

45.     As Senior Director of Business Development, Van Pelt was responsible for securing and protecting profitable business opportunities on Prismier's behalf. He would interact with customers and use his discretion to present solutions to customer problems or to increase revenue from existing and prospective customers. Van Pelt also oversaw and was responsible for

assisting a cross-functional operational team in booking business and providing guidance on pricing terms. The role required subject matter expertise, the ability to represent Prismier in a professional manner and to build relationships on behalf of Prismier, and to utilize Prismier's customer management tools to follow up on leads and build the reach of the business.

46.     As Senior Director of Business Development, Van Pelt had daily access to Prismier's confidential, proprietary, and trade secret information, including the design files of individual customers and suppliers. Van Pelt also had daily access to Prismier's customer and supplier database, including the contracts, pricing information, contact information, and design information for the individual suppliers and customers.

47.     As Senior Director of Business Development, Van Pelt executed an Employment Agreement (the "Employment Agreement") consistent with the terms of his executive role. This Agreement was amended from time to time to reflect changes in his compensation. A true and correct copy of Van Pelt's initial 2017 Employment Agreement is attached to this Complaint as Exhibit C. A true and correct copy of Van Pelt's 2019 Employment Agreement is attached to this Complaint as Exhibit D.

48.     Under the 2019 Employment Agreement, Van Pelt's base salary would be $175,000.00. (Ex. D, Employment Agreement, § 3.1.) He would also be eligible for an Employee Sales Bonus and a Company Performance Bonus (*id.* § 3.2–3.3) and to participate in an Equity Appreciation Rights Plan. (*Id.* § 3.2–3.4).

49.     Prismier also provided Van Pelt robust benefits including dental and medical health plans, a 401(k) plan, fifteen (15) days of PTO, and use of a company-owned vehicle. (*Id.* § 3.5–3.8.)

50.     In the 2017 and 2019 versions of his Employment Agreement, Van Pelt agreed that as a Senior Director, he owed a duty of loyalty to the Prismier:

> During the term of this Agreement, Employee shall act in the best interests of the Company and shall devote all Employee's business time and best efforts (subject in each case to periods of vacation and illness) to the performance of Employee's duties hereunder and shall not engage in any other business, profession or occupation for compensation or otherwise, without the prior written consent of the Managers of the Company, which consent may be withheld in the sole discretion of the Managers of the Company. Without limiting the foregoing, Employee shall not usurp or misappropriate any corporate opportunity that would be available to the Company.

(Exs. B & C, § 1.2.)

51.     The 2017 and 2019 Employment Agreements contained the following Confidential and Proprietary Information Provision, in which Van Pelt acknowledged that this position within Prismier would grant him access to Prismier's confidential information, the misappropriation or disclosure of which may cause Prismier irreparable injury:

> 4.1    Confidential and Proprietary Information.    Employee acknowledges that Employee is in a relationship of confidence and trust with the Company and will come into possession of proprietary information that has been created, discovered, developed, acquired or otherwise become known to the Company or its Affiliates . . . which could constitute a major asset of the Company or its Affiliates and be of significant commercial value, the use, misappropriation or disclosure of such would cause a breach of trust and could cause irreparable injury to the Company or its Affiliates ([the] "Proprietary Information"). By way of illustration, Proprietary Information includes sensitive types of information which are owned or used by the Company, its Affiliates or third party vendors, including: (a) business channels, product development and marketing plans, advertising programs, and planning and merchandising and franchising strategies and pricings; (b) technical information, including formulae, pricing information, processes and methods of production; (c) the identity, purchase and payment patterns of, and special relations with, vendors and prospective vendors; (d) the identity, net prices and credit terms of, and special relations with, suppliers and shippers and franchise fees and other terms with franchisees; (e) business records and financial information; and (f) any other information or documents which Employee is told or reasonably ought to know that the Company, its Affiliates or any third party vendor regards as confidential. . . .

(*Id.* § 4.1.)

11

52.     The 2017 and 2019 Employment Agreements also contained a Non-Disclosure Agreement, in which Van Pelt promised to protect and not to use or disclose, or use for his own benefit, Prismier's confidential and proprietary information:

> 4.2     <u>Non-Disclosure</u>. Employee acknowledges that all Proprietary Information shall be the sole property of the Company or its Affiliates and their successors and assigns. Employee further acknowledges that it is essential for the proper protection of the business of the Company that such Proprietary Information be kept confidential and not disclosed to third parties or used for the benefit of Employee. Accordingly, Employee agrees that during the term of Employee's employment, and for so long thereafter as the information remains Proprietary Information and is permitted by law, to keep in confidence and trust all Proprietary Information, and not to use, disclose, disseminate, publish, copy or otherwise make available, directly or indirectly, except in the ordinary course of the performance of Employee's duties under this Agreement, any Proprietary Information except as expressly authorized in writing by the Company . . . .

(*Id.* § 4.2.)

53.     Van Pelt agreed in his 2017 and 2019 Employment Agreements, as he had in the 2015 Confidentiality Agreement, that he would return to Prismier "all property (including cell phones and computers), documents and data of any nature owned by the Company or its Affiliates" at the end of his employment. (*Id.* § 4.3.)

54.     As part of his 2017 and 2019 Employment Agreements, and in consideration for his executive level job, access to Prismier's confidential and proprietary business information, and his eligibility to participate in bonus plans, Van Pelt agreed to abide by certain one-year Non-Competition, Non-Solicit, and Non-Disparagement provisions (collectively, the "Restrictive Covenants"):

<u>4.4  Non-Competition, Non-Solicitation, Non-Disparagement.</u>

(a) . . . during the period beginning on the Effective Date and ending 12 months after the date of termination of Employee's employment for any reason, Employee shall not, directly or indirectly, as agent, employee, consultant, distributor, representative, equity holder, manager, partner or in any other capacity, own (other than through the passive ownership of less than 1% of the publicly traded shares of any Person), operate, manage, control, engage in, invest in (other than through the passive ownership of less than 1% of the publicly traded shares of any Person), participate in any manner in, act as a consultant or advisor to, render services for (alone or in association with any Person) or otherwise assist any Person that engages in or owns, invests in, operates, manages or controls any venture or enterprise that directly or indirectly engages or proposes to engage, within the United States of America, in any business, including sheet metal fabrication and stamping, injection molding, CNC turning and machining, die casting[1], and assembly thereof, currently engaged in by the Company.

(b) During the period beginning on the Effective Date and ending 12 months after the date of termination of Employee's employment for any reason, Employee shall not, without the prior written consent of the Company, directly or indirectly, as an agent, employee, consultant, distributor, representative, equity holder, manager, partner or in any other capacity:

(i) solicit the business of any Person who is a customer of the Company or its Affiliates to provide the services or products which the Company or any of its Affiliates is able to provide; or

(ii) induce or attempt to induce any customer, supplier, licensee, licensor, franchisee, employee, consultant or other business relation of the Company or its Affiliates to refrain from doing business with the Company or any of its Affiliates, to deal with any competitor of the Company or in any way materially interfere with its relationship with the Company or its Affiliates.

(*Id.* § 4.4(a)–(b).)

---

[1] The Non-Competition provisions in the 2017 and 2019 Employment Agreements are unchanged, except for the addition of "die casting" in the 2019 Agreement. (Exs. B & C, § 4.4(a)–(b).)

55.     As part of these Restrictive Covenants, Van Pelt agreed that "monetary damages alone would be insufficient to make the Company whole in the event he breaches or is about to breach any of the provisions of [the Restrictive Covenants]." (*Id.* § 4.4(f).) He further agreed that "in addition to any monetary damages or other relief to which the Company may be entitled, the Company shall be entitled to immediate and permanent injunctive relief in the event that a court of competent jurisdiction finds that a breach or threatened breach by Employee of any provision of [the Restrictive Covenants] has occurred or that there is a likelihood that the Company will prevail on the merits without the necessity of proving actual damages . . . ." (*Id.*)

56.     The 2017 and 2019 Employment Agreements provide that:

> If a final judgment of a court or tribunal of competent jurisdiction determines that any term or provision contained in this Section 4.4 is invalid or unenforceable, then the parties agree that such court or tribunal shall have the power to reduce the scope, duration or geographic area of the term or provision, to delete specific words or phrases or to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision. This Section 4.4 shall be enforceable as so modified after the expiration of the time within which the judgment may be appealed. Employee acknowledges and agrees that this Section 4.4 is reasonable and necessary to protect and preserve the Company's legitimate business interests and to prevent any unfair advantage conferred on the Employee.

(*Id.* § 4.4(e).)

57.     After several years of what Prismier believed to be a mutually beneficial and enjoyable employment of Van Pelt, on January 1, 2021, Prismier and Van Pelt entered an Agreement to "amend and restate certain terms and conditions set forth in the [Employment] Agreement" (the "2021 Amendment"). A true and accurate copy of the 2021 Amendment is attached to this Complaint as <u>Exhibit E.</u>

58.     The 2021 Amendment amended Section 3.2 of the Employment Agreement, which

outlined the terms of the Employee Sales Bonus. (Ex. E, 2021 Amendment, § 1). The remaining provisions of the 2019 Employment Agreement "shall remain in full force and effect" and the 2021 Amendment "shall not, except as expressly provided herein, be deemed to constitute consent to any waiver or modification of any other terms or provisions of the Original Agreement." (*Id.* § 2,)

### D. Van Pelt Resigns and Competes Against Prismier

59.     In or around the summer of 2023, Van Pelt began talking to Prismier about potentially resigning as Senior Director.

60.     On July 23, 2023, Van Pelt emailed Prismier, informing it that either Prismier must permit Van Pelt to continue working for Prismier while also working on outside sales projects for himself, or he would resign. A true and correct copy of this email is attached to this Complaint as Exhibit F.

61.     Prismier did not consent to allowing Van Pelt to perform outside sales work during his employment with Prismier.

62.     On July 25, 2023, Van Pelt sent an email tendering his notice of resignation from Prismier. In the email, Van Pelt informed Prismier that he and his new business would not directly solicit Prismier's customers, except for those customers that Van Pelt believed Prismier could no longer support. A true and accurate copy of Van Pelt's email and attached resignation letter is attached as Exhibit G.

63.     On August 1, 2023, Van Pelt again tried to negotiate with Prismier. Van Pelt proposed that his company, Elite Manufacturers, would use only those suppliers who Van Pelt determined could service both Elite Manufacturers and Prismier without negatively affecting Prismier's business. Van Pelt maintained also that Elite Manufacturers would go after only those Prismier customers that Van Pelt believed Prismier could no longer service. A true and accurate

copy of this email exchange and accompanying attachment is attached to this Complaint as Exhibit H.

64.     Prismier did not agree to Van Pelt's proposal.

65.     On August 2, 2023, Van Pelt incorporated his new manufacturers representation company, Elite Manufacturers Direct, Inc., under the laws of Illinois in Crystal Lake, Illinois.

66.      Elite Manufacturers is a manufacturers representation company that orchestrates the sale of metal and plastic manufacturing services that are directly competitive to Prismier.

67.     On August 5, 2023, Van Pelt again pressed Prismier to consent to Elite Manufacturers working with certain Prismier customers that Van Pelt believed Prismier could not service. A true and accurate copy of this email is attached as Exhibit I.

68.     On August 9 and 10, 2023,  unbeknownst to Prismier, Van Pelt used his Prismier email account to send svanpelt1124@gmail.com zip files containing confidential-stamped design files belonging to Prismier customers, as well confidential-stamped PDFs with drawings and design files belonging to Prismier customers.

69.     On August 9 and 10, 2023, also unbeknownst to Prismier at the time, Van Pelt accessed almost four hundred (400) files or folders in Prismier's customer and supplier database, which include the files and folders for almost every Prismier customer or supplier, the vast majority of which Van Pelt had no business reason to access at that time.

70.     Van Pelt's final day of employment with Prismier was August 11, 2023. A true and accurate copy of the resignation letter Van Pelt sent on his last day of employment is attached to this Complaint as Exhibit J.

**E.  Van Pelt Ignores Prismier's Demands to Cease and Desist His Wrongful Conduct**

71.     On August 25, 2023, Prismier, through counsel, wrote to Van Pelt to remind him

of his obligations under the Employment Agreement, as amended, including Van Pelt's obligations (i) to return Prismier's property, (ii) to return to Prismier and not to use or disclose any customer or supplier lists or contact information he acquired during his employment with Prismier, (iii) to protect Prismier's confidential and proprietary information; (iv) and to abide by the Restrictive Covenants. A true and correct copy of this letter is attached to this Complaint as Exhibit K.

72.     Van Pelt did not respond to the letter sent on August 25, 2023, other than to acknowledge receipt and that he has returned all information belonging to Prismier. (Ex. K at 2.)

73.     Instead, in the weeks and months after his employment with Prismier ended, but while his non-competition period was ongoing, Van Pelt, on behalf of Elite Manufacturers, solicited Prismier's current and prospective customers—including the customers whose information he had accessed in the days before his departure from Prismier.

74.     In September 2023, Prismier learned that that Van Pelt, on behalf of Elite Manufacturers, was soliciting competitive business from at least two of Prismier's customers.

75.     Upon learning this information, on September 21, 2023, Prismier, through counsel, sent a letter to Van Pelt demanding that he cease and desist all actions in violation of his Employment Agreement, as amended, and federal and state law. A true and correct copy of this letter is attached to this Complaint as Exhibit L.

76.     Van Pelt's counsel first responded by telephone call. On this call, the Parties agreed that Van Pelt would provide Prismier a list of Prismier's customers and suppliers with which Elite Manufacturers was working.

77.     On November 2, 2023, Van Pelt's counsel provided a written response to the letter, asserting that Prismier breached the Employment Agreement by not paying Van Pelt his discretionary bonus. Van Pelt did not provide the list of Prismier customers and suppliers. A true

17

and correct copy of this letter is attached to this Complaint as Exhibit M.

78.　On November 21, 2023, Prismier's counsel responded by letter, asking again for the agreed upon list of Prismier's customers and suppliers with which Elite Manufacturers was working. Prismier reiterated its demand that Van Pelt cease all competitive actions in violation of his Employment Agreement and federal and state law. A true and correct copy of this letter is attached to this Complaint as Exhibit N.

79.　With no response from Van Pelt, Prismier's counsel followed up by letter on December 21, 2023. A true and correct copy of this letter is attached to this Complaint as Exhibit O.

**F. Defendants' Continued Competition and Prismier's Investigation**

80.　In early 2024, Prismier learned that Elite Manufacturers was soliciting competitive work from at least four (4) additional Prismier customers and suppliers.

81.　In response to this information and in anticipation of potential litigation, Prismier retained a forensic examiner to conduct a forensic examination of the desktop Van Pelt used during his employment with Prismier.

82.　This forensic examination revealed significant activity by Van Pelt during his final days of employment.

83.　For example, the examination uncovered that Van Pelt had emailed to his personal email account zip files containing Prismier's confidential, proprietary and trade secret information, including confidential-stamped design files for specific customers.

84.　The examination also revealed Van Pelt's access of almost four hundred (400) files or folders in Prismier's customer and supplier database, including the files and folders for the Prismier customers or suppliers for which Elite Manufacturers was now providing competitive

work.

85.     On May 16, 2024, Prismier wrote to Van Pelt. Prismier demanded again that Defendants cease violating Van Pelt's Employment Agreement, and that Defendants supply information about the extent of Elite Manufacture's breach, including a list of Prismier's suppliers and customers with which Defendants are doing business. A true and correct copy of this letter is attached to this Complaint as Exhibit P.

86.     In response, Van Pelt offered only to meet with Prismier outside the presence of counsel. Van Pelt refused to provide the requested information, to provide assurances that he was not breaching his contractual obligations, or to meet with Prismier in the presence of counsel.

87.     Prismier's final correspondence with Van Pelt occurred on September 5, 2024, in which Prismier attached a copy of the prepared complaint and demanded one final time that Van Pelt provide the requested information as well as assurances that he will comply with the terms of his Employment Agreement, his fiduciary duties, the law. A true and correct copy of this letter is attached to this Complaint as Exhibit Q.

88.     Defendants refused to provide the requested information or assurances, unless Prismier turned over certain documents. A true and correct copy of this letter is attached to this Complaint as Exhibit R.

89.     Defendants remain in possession of Prismier's proprietary, confidential, and trade secret information, and continue to use that information to solicit and service former Prismier customers and to compete against Prismier in the marketplace.

**G. As a Result of Defendants' Scheme, Prismier Has Lost Employees, Business, and Profits**

90.     Defendants' scheme negatively impacted Prismier's business relationships and its profitability.

91.     As alleged above, Defendants solicited competitive business from at least four (4) known suppliers and seven (7) known customers.

92.     Prismier has further suffered the loss of its confidential and proprietary information, including its design files Van Pelt took, and the customer and supplier database information that he accessed, in his final days of his employment.

93.     Prismier has also suffered a loss of its goodwill and reputation.

94.     Further as a result of Defendants' conduct, Prismier has sustained and continues to sustain irreparable harm as a result of the loss of control over its intellectual property and the secrecy of its confidential information, which is harmful not only to its business, but also to its goodwill and reputation, built over the course of its twenty-year history.

**COUNT I**
**Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.***
**(Plaintiff against all Defendants)**

95.     Prismier restates and incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

96.     Prismier has developed and owns valuable trade secrets related to its services.

97.     The trade secrets are used in, or intended for use in, interstate or foreign commerce.

98.     Prismier's trade secrets have value because they are not generally known to the public and are not readily ascertainable.

99.     Prismier has taken reasonable measures to safeguard its trade secrets, including the issuance, enforcement, and training of confidentiality and data security policies, granting and monitoring limited access to its trade secrets, using password protection to access its trade secrets on proprietary databases, and cutting off former employee's access to Prismier facilities, systems, and data storage.

100. Defendants took electronic data containing Prismier's trade secret and confidential information without a legitimate purpose.

101. Van Pelt used improper means to acquire and use Prismier's trade secrets by virtue of accessing and downloading Prismier's information without a lawful purpose after he planned to leave Prismier and compete against Prismier through Elite Manufacturers.

102. Defendants have obtained an economic benefit from the misappropriation of Prismier's trade secrets.

103. Defendants' misappropriation was willful and malicious.

104. As a result of Defendants' unlawful actions, Prismier has suffered harm, including: (1) the loss of its confidential and proprietary information, including the lost value derived from Prismier's investment in a large amount of time and resources to develop the confidential information that gives Prismier an advantage over its competitors; (2) lost business from customers that are now serviced by Defendants; and (3) damage to goodwill and reputation.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants; and, award Plaintiff: actual damages; any unjust enrichment caused by the misappropriation of the trade secrets that is not accounted in computing damages for actual loss; damages caused by the misappropriation, measured by the imposition of liability for a reasonable royalty for the Defendants' unauthorized disclosure or use of the trade secret; exemplary damages; injunctive relief; attorneys' fees and costs; pre- and post-judgment interest; and, any other relief that this Court deems just and reasonable.

## COUNT II
### Violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*
### (Plaintiff against all Defendants)

105.     Prismier restates and incorporates by reference the allegations contained in the proceeding paragraphs of this Complaint.

106.     The Illinois Trade Secrets Act prohibits the misappropriation of trade secrets.

107.     Prismier has developed and owns valuable trade secrets related to its products and services.

108.     The trade secrets are used in, or intended for use in, Illinois.

109.     Prismier's trade secrets have value because they are not generally known to the public and are not readily ascertainable.

110.     Prismier has taken reasonable measures to safeguard its trade secrets.

111.     Defendants have obtained an economic benefit from the misappropriation of Prismier's trade secrets.

112.     Defendants used improper means to acquire and use Prismier's trade secrets while knowing that the acquisition and use was improper.

113.     As a result of Defendants' unlawful actions, Prismier has suffered harm, including: (1) the loss of its confidential and proprietary information, including the lost value derived from Prismier's investment in a large amount of time and resources to develop the confidential information that gives Prismier an advantage over its competitors; (2) lost business from customers that are now serviced by Defendants; and (3) damage to goodwill and reputation.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants; and, award Plaintiff: actual damages; any unjust enrichment caused by the misappropriation of the trade secrets that is not accounted in computing damages for actual

loss; damages caused by the misappropriation, measured by the imposition of liability for a reasonable royalty for the Defendants' unauthorized disclosure or use of the trade secret; exemplary damages; injunctive relief; attorneys' fees and costs; pre- and post-judgment interest; and, any other relief that this Court deems just and reasonable.

**COUNT III**
**Breach of Contract – Employment Agreement**
**(Plaintiff against Defendant Van Pelt)**

114.     Prismier restates and incorporates by reference the allegations contained in the proceeding paragraphs of this Complaint.

115.     Van Pelt and Prismier are parties to the Employment Agreement.

116.     The Employment Agreement, as signed on January 1, 2019, and amended on January 1, 2021, is a valid and enforceable contract.

117.     Prismier performed its obligations under the Employment Agreement.

118.     The Employment Agreement imposed a duty on Van Pelt to refrain from disclosing to unauthorized persons or using in unauthorized ways Prismier's confidential or proprietary information.

119.     The Employment Agreement imposed a duty on Van Pelt, during his employment and for a period of twelve (12) months thereafter, to refrain from influencing customers or suppliers of Prismier to divert any of their business to any competitor of Prismier or otherwise away from Prismier.

120.     The Employment Agreement imposed a duty on Van Pelt, during his employment and for a period of  twelve (12) months thereafter, to refrain from performing services in any capacity in all or any portion of any business that Prismier conducts as of the date of termination.

121.     Van Pelt breached his contractual obligations to Prismier, for example, Van Pelt:

    a.  Used confidential information within the scope of the Employment Agreement to compete against Prismier.

    b.  Contacted, solicited, or encouraged current customers and suppliers of Prismier to begin doing business with Van Pelt and Elite Manufacturers, instead of Prismier.

    c.  Established and operated a competitive manufacturing company no later than August 2, 2023, which sought to conduct manufacturing business identical to that of Prismier for Prismier's customers and using its suppliers.

122.    As a direct and proximate result of Van Pelt's violations of the Employment Agreement, Prismier has suffered harm, including: (1) the loss of their confidential and proprietary information, including the lost value derived from Prismier investment in a large amount of time and resources to develop the confidential information that give Prismier an advantage over their competitors; and (2) lost business from customers that are now serviced by Defendants.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant Scott Van Pelt; and, award Plaintiff: compensatory damages, general damages, lost profits, disgorgement of any and all compensation Van Pelt received from Prismier while he was breaching his Employment Agreement, injunctive relief, attorneys' fees and costs, pre- and post-judgment interest, and any other relief that this Court deems just and reasonable.

**COUNT IV**
**Breach of Contract – 2015 Confidentiality Agreement**
**(Plaintiff against Defendant Van Pelt)**

123.    Prismier restates and incorporates by reference the allegations contained in the proceeding paragraphs of this Complaint.

124.    Van Pelt and Prismier entered a valid, enforceable contract when they executed the Confidentiality Agreement on October 23, 2015.

125.    The 2015 Confidentiality Agreement imposed a duty on Van Pelt to refrain, during his employment and for a term of three years thereafter, from disclosing to unauthorized persons

or using in unauthorized ways Prismier's confidential or proprietary information.

126.     Van Pelt breached his contractual obligation to Prismier by using confidential information within the scope of the 2015 Confidentiality Agreement to compete against Prismier as Elite manufacturers Direct, Inc.

127.     As a direct and proximate result of Van Pelt's unlawful actions, Prismier has suffered harm, including: (1) the loss of their confidential and proprietary information, including the lost value derived from Prismier investment in a large amount of time and resources to develop the confidential information that give Prismier an advantage over their competitors; and (2) lost business from customers that are now serviced by Defendants.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant Scott Van Pelt; and, award Plaintiff: compensatory damages, general damages, lost profits, disgorgement of any and all compensation Van Pelt received from Prismier while he was breaching his Confidentiality Agreement, injunctive relief, attorneys' fees and costs, pre- and post-judgment interest, and any other relief that this Court deems just and reasonable.


**COUNT V**
**Breach of Fiduciary Duty**
**(Plaintiff against Defendant Van Pelt)**

128.     Prismier restates and incorporates by reference the allegations contained in the proceeding paragraphs of this Complaint.

129.     Van Pelt was a senior employee and agent of Prismier, charged with important job duties regarding Prismier's business strategies, intellectual property, customer relationships, and procurement plans.

130.     As a senior employee and agent of Prismier, Van Pelt had a duty to not use

Prismier's confidential information, trade secrets, and other property for his own purposes or the purposes of a competitive business.

131.     As a senior employee and agent of Prismier, Van Pelt had a duty to not acquire a material benefit from Prismier's existing or prospective customers at the expense of Prismier.

132.     Van Pelt, while still being employed at Prismier, breached his fiduciary duties to Prismier by secretly usurping Prismier's customer information, business strategies, and valuable property, and using these assets to compete against Prismier through Elite Manufacturers.

133.     Van Pelt's actions were not conducted in good faith.

134.     As a direct result of Van Pelt's actions, Prismier has suffered harm, including: (1) the loss of customers; and (2) lost productivity due to Van Pelt diverting his attention to establishing a competing business instead of performing his duties as Prismier's Senior Director of Business Development, damaging Prismier in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant Scott Van Pelt; and, award Plaintiff: compensatory damages, general damages, lost profits, injunctive relief, disgorgement of any and all compensation Van Pelt received from Prismier while he was breaching his fiduciary duties, punitive damages, attorneys' fees and costs, pre- and post-judgment interest, and any other relief that this Court deems just and reasonable.

## COUNT VI
## Tortious Interference with Business Contracts / Prospective Economic Advantage
### (Plaintiff against Defendants)

135.     Prismier restates and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

136.     Prismier has contractual or business relationships with its customers and suppliers.

137.    By his conduct described above, Van Pelt intentionally interfered with Prismier's contractual or business relationships with its existing customers, as well as potential customers.

138.    Such interference has caused harm to Prismier in the loss of business and diminished reputation in the community.

139.    As a result of Van Pelt's tortious interference, Prismier has sustained damages including but not limited to loss of business and goodwill in the community.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants; and, award Plaintiff: compensatory damages, general damages, lost profits, disgorgement of any and all compensation Van Pelt received from Prismier while he was tortiously interfering, injunctive relief, punitive damages, attorneys' fees and costs, pre- and post-judgment interest, and any other relief that this Court deems just and reasonable.

**COUNT VII**
**Tortious Interference with Contracts**
**(Plaintiff against Defendant Elite Manufacturers)**

140.    Prismier restates and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

141.    Prismier has a valid contractual relationship with Scott Van Pelt, Prismier's former Senior Director of Business Development, by virtue of the Employment Agreement, as amended, and the 2015 Confidentiality Agreement.

142.    Defendant Elite Manufacturers, the owner and President of which is Van Pelt, was always aware relevant to the allegations in this lawsuit that Van Pelt had ongoing contractual obligations to Prismier.

143.    Defendant Elite Manufacturers has intentionally interfered with Prismier's contractual relationships with Van Pelt when Van Pelt breached those contracts on behalf of Elite

Manufacturers.

144.   As a result of Elite Manufacturer's tortious interference, Prismier has sustained damages including but not limited to loss of business and goodwill in the community.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant Elite Manufacturer; and, award Plaintiff: compensatory damages, general damages, lost profits, injunctive relief, punitive damages, attorneys' fees and costs, pre- and post-judgment interest, and any other relief that this Court deems just and reasonable.

## DEMAND FOR JURY TRIAL

145.   Plaintiff demands a jury trial as to all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Prismier, LLC respectfully requests that this Honorable Court:

A.   Enter judgment in Plaintiff's favor and against Defendants under Count I, holding Defendants liable for damages stemming from the misappropriation of Prismier's trade secrets under federal law, including actual damages, any unjust enrichment that is not accounted in computing damages for actual loss, damages measured by the imposition of liability for a reasonable royalty for the Defendants' unauthorized disclosure or use of the trade secret, and exemplary damages;

B.   Enter judgment in Plaintiff's favor and against Defendants under Count II, holding Defendants liable for damages stemming from the misappropriation of Prismier's trade secrets under Illinois law, including actual damages, any unjust enrichment that is not accounted in computing damages for actual loss, damages measured by the imposition of liability for a reasonable royalty for the Defendants' unauthorized disclosure or use of the trade secret, and exemplary damages;

C.  Enter judgment in Plaintiff's favor and against Defendant Scott Van Pelt under Count III, holding Van Pelt liable for damages stemming from his breaches of the Employment Agreement, including compensatory damages, general damages, lost profits, and disgorgement of the compensation Van Pelt received from Prismier while he was breaching his Employment Agreement;

D.  Enter judgment in Plaintiff's favor and against Defendant Scott Van Pelt under Count IV, holding Van Pelt liable for damages stemming from his breaches of the 2015 Confidentiality Agreement, including compensatory damages, general damages, lost profits, and disgorgement of the compensation Van Pelt received from Prismier while he was breaching the agreement;

E.  Enter judgment in Plaintiff's favor and against Defendant Scott Van Pelt under Count V, holding Van Pelt liable for damages stemming from any breaches of his fiduciary duties, including compensatory damages, general damages, lost profits, injunctive relief, and disgorgement of the compensation Van Pelt received from Prismier while he was breaching his fiduciary duties;

F.  Enter judgment in Plaintiff's favor and against Defendants under Count VI, holding Defendants liable for damages stemming from their tortious interference, including compensatory and general damages, lost profits, and disgorgement of the compensation Prismier paid Van Pelt while he was tortiously interfering;

G.  Enter judgment in Plaintiff's favor and against Defendant Elite Manufacturers Direct, Inc. under Count VII, holding Elite Manufacturers liable for damages

stemming from their tortious interference with a contract, including compensatory damages, general damages, and lost profits;

H. Issue an order enjoining Defendants from retaining or possessing Prismier's confidential business information or using Prismier's confidential business information to solicit Prismier's current or prospective customers;

I. Award Prismier its reasonable attorney's fees and associated costs;

J. Award Prismier punitive damages;

K. Award Prismier prejudgment and postjudgment interest; and

L. Grant such other relief as the Court may deem to be just and appropriate.


Filed: October 21, 2024

Respectfully Submitted,

PRISMIER, LLC

By: /s/ *Gillian G. Lindsay*

Gillian G. Lindsay
IL ARDC No. 6298511
Julie C. Ratliff
IN Bar No. 35688-49
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4011
glindsay@taftlaw.com
jratliff@taftlaw.com

*Counsel for Plaintiff*